UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN GAUDETTE, )<br>)<br>      Plaintiff, )<br>  v. )<br>)<br>CORNING INCORPORATED, )<br>)<br>      Defendant. ) | No. 2:23-cv-00128-LEW |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Stephen Gaudette filed this lawsuit against Defendant Corning Incorporated, asserting a claim of age discrimination in violation of the Maine Human Rights Act ("MHRA"). Before the Court is Defendant's Motion for Summary Judgment (ECF No. 51). For the reasons below, the Motion is DENIED.

### BACKGROUND

The following facts are drawn from the parties' statements of material facts submitted in accordance with Local Rule 56 (ECF No. 51-2, 54, and 62) and recited in the light most favorable to the Plaintiff. The Plaintiff Stephen Gaudette was 62 years old when he worked in the Molding Department at a Corning production facility in Kennebunk, Maine. Pl. Statement of Add'l Material Facts ("PSMF") ¶ 1 (ECF No. 54); Def. Resp. to PSMF ¶ 1 (ECF No. 62). The Plaintiff's employer was Staffmark, a staffing agency that the Defendant engaged to supply temporary workers. Def. Statement of Material Facts ("DSMF") ¶ 7 (ECF No. 51-2); Pl. Opp. to DSMF ¶ 1 (ECF No. 54). According to

Defendant's practice at the time, temporary workers were eligible to apply for conversion to regular employment at Corning through an online portal after 90 days on the job. DSMF ¶¶ 6-7; Pl. Opp. to DSMF ¶¶ 6-7. Temporary workers received performance evaluations at 30 days, 45 days, 60 days, and 90 days. DSMF ¶ 8; Pl. Opp. to DSMF ¶ 8. The Defendant would consider these evaluations in determining whether to extend interviews to temporary workers who had applied for regular employment, although there was no formal threshold that applicants were required to meet to qualify. DSMF ¶ 9; Pl. Opp. to DSMF ¶ 9; Def. Resp. to PSMF ¶ 72; *see also* Conboy Dep. Tr. 12:10-22 (ECF No. 55, Ex. 2).

Corning evaluated temporary worker performance across seven areas (communication skills, professionalism, punctuality, quality of work, quantity of work, teamwork/flexibility, and necessary skills to complete tasks) and rated each on a scale of one ("Extremely Dissatisfied") to five ("Extremely Satisfied"). DSMF ¶¶ 10-11; Pl. Opp. to DSMF ¶¶ 10-11. The Plaintiff's performance as a temporary worker was reviewed as follows:

- The Plaintiff's 30-day evaluation rated his performance in "quantity of work" as "Slightly Dissatisfied" (a numeric score of 2). DSMF ¶ 17. In the remaining categories, he received one "Very Satisfied" (4) and five assessments of "Somewhat Satisfied" (3). Pl. Opp. to DSMF ¶ 17. This combination of evaluations produced an overall performance rating of 21. DSMF ¶ 18; Pl. Opp. to DSMF ¶ 18.
- The Plaintiff's 45-day evaluation rated his performance in three areas as "Extremely Dissatisfied" (1). DSMF ¶ 20. He also received one "Slightly Dissatisfied" (2) and

> two assessments of "Somewhat Satisfied" (3). DSMF ¶ 21. This combination of evaluations produced an overall performance rating of 13. DSMF ¶ 22.[1]

- The Plaintiff's 60-day evaluation rated his performance in "teamwork/flexibility" as "Slightly Dissatisfied" (2) and in all other categories as "Somewhat Satisfied" (3), for an overall performance rating of 20. DSMF ¶¶ 24-26; Pl. Opp. to DSMF ¶¶ 24-26.

- The Plaintiff's 90-day evaluation rated his performance in three areas as "Slightly Dissatisfied" (2) and as "Somewhat Satisfied" (3) in all other areas, for an overall performance rating of 18. DSMF ¶¶ 28-30; Pl. Opp. to DSMF ¶¶ 28-30.

The Plaintiff applied for regular employment with Corning in March 2021, as he was eligible to do as a temporary worker with more than 90 days on the job. DSMF ¶¶ 6, 31; Pl. Opp. to DSMF ¶¶ 6, 31. Sometime after applying, the Plaintiff showed Dustin Pirente, a Human Resources Consultant, an email on his phone indicating that he had been offered a permanent position in the Stripette Department and asked if the offer could be changed to the Molding Department.[2] DSMF ¶¶ 32-33; Pl. Opp. to DSMF ¶¶ 32-33. Mr. Pirente consulted with Elizabeth Sullo (the Plaintiff's supervisor in the Molding Department), who emailed Alexis Cashman, an HR manager, stating, "Steve Gaudette filled out an application for molding a few weeks ago and was sent an offer for Stripette.

---

[1] The Plaintiff points out that this performance evaluation was not conducted by his regular supervisor in the Molding Department but does not appear to dispute the contents of the evaluation. Pl. Opp. to DSMF ¶¶ 20-22.

[2] There appears to be some confusion over how the Plaintiff came to obtain the email offer he showed to Mr. Pirente, including whether he received any email at all. Plaintiff maintains that he believed he had been offered a job and took steps consistent with that understanding, including traveling to Sanford to complete a drug test. PSMF ¶¶ 12-16. The Defendant points out that the Plaintiff failed to produce this email during discovery and argues that the reason the Plaintiff provided for that failure (that the email was deleted, along with all other emails from 2020 to 2021, during a Yahoo email update) is lacking, but nonetheless maintains that this factual dispute is not material. *See* Def. Resp. to PSMF ¶¶ 12-16; Def. Mot. at 5. Because a court at summary judgment draws inferences from disputed facts in the light most favorable to the nonmoving party, I put the Defendant's insinuations to the side and assume here that the Plaintiff did in fact receive the email offering him a position in the Stripette department, which he showed to Mr. Pirette on his phone.

Can they change the offer to molding?" DSMF ¶¶ 35-36; Pl. Opp. to DSMF ¶¶ 35-36. This request reached two other HR staffers, who determined that the Plaintiff was not on the list of temporary workers to be converted to regular employees, but decided to "move forward with the hire" regardless. DSMF ¶¶ 38-39; Pl. Opp. to DSMF ¶¶ 38-39; *see also* Ex. 4 to Decl. of Elizabeth Sullo (ECF No. 51-6). They created an offer letter for a position in the Molding Department on April 6, 2021, which the Plaintiff formally accepted the next day. DSMF ¶ 40; Pl. Opp. to DSMF ¶¶ 39, 40.

The Defendant maintains that, after the offer letter was sent to the Plaintiff, Plant Operations Manager Jennifer Hemly "determined that Plaintiff's performance evaluations did not meet an acceptable threshold for conversion to a regular employee and therefore did not approve his conversion to a regular employee." DSMF ¶ 42. The Plaintiff disputes this claim, pointing to Ms. Hemly's deposition testimony that she has no memory of the Plaintiff or his hiring process. Pl. Opp. to DSMF ¶ 42.

A week or so after the Plaintiff received the formal offer letter, Ms. Cashman told the Plaintiff that the offer was not an actual job offer, and that Corning would not be hiring him as a regular employee. DSMF ¶ 43; Pl. Opp. to DSMF ¶ 43. After this conversation, the Plaintiff continued to work in the Molding Department for several weeks as a temporary worker employed by Staffmark. The Defendant contends that Plaintiff exhibited performance issues during this time, which the Plaintiff denies. DSMF ¶¶ 44-45; Pl. Opp. to DSMF ¶¶ 44-45. The Defendant also points to email correspondence in June and July 2021 between the Plaintiff's supervisors and Staffmark discussing the Plaintiff's

4

performance. DSMF ¶¶ 46-49.[3] The Plaintiff maintains that his supervisor never discussed any performance issues with him. Pl. Opp. to DSMF ¶¶ 44-51.

On July 22, 2021, the Plaintiff met with Ms. Sullo and Mr. Pirente. DSMF ¶ 50; Pl. Opp. to DSMF ¶ 50. The Defendant contends that, at this meeting, Ms. Sullo and Mr. Pirente discussed the Plaintiff's performance issues. DSMF ¶¶ 50-51. The Plaintiff denies that there was any discussion of performance issues at this meeting, instead maintaining that they discussed that the Plaintiff was "slowing down." Pl. Opp. to DSMF ¶ 50-51. At this meeting, the Plaintiff asked about his offer for regular employment, and Ms. Sullo and Mr. Pirente informed him that Corning was unlikely to extend him an offer for regular employment. DSMF ¶ 52-53; Pl. Opp. to DSMF ¶¶ 52-53. The Plaintiff also claims that Ms. Sullo stated that she did not have money in the budget to hire him, although the Defendant disputes this. PSMF ¶ 38; Def. Resp. to PSMF ¶ 38. The Plaintiff did not return to work at Corning after this meeting. DSMF ¶ 54; Pl. Opp. to DSMF ¶ 54.

Around this time, the Defendant hired two temporary workers as regular employees, both of whom were younger than the Plaintiff. DSMF ¶¶ 63-72; Pl. Opp. to DSMF ¶¶ 63-72. The first of these individuals received a 30-day performance evaluation rating of 25 out of 35, a 45-day rating of 24 out of 35, a 60-day rating of 28 out of 35, and a 90-day rating of 35 out of 35, for a total overall average rating of 28 out of 35. DSMF ¶¶ 64, 65; Pl. Opp. to DSMF ¶¶ 64, 65. The second individual had two periods of temporary

---

[3] The Plaintiff's response to the Defendant's Local Rule 56 statements denies the paragraph in which the Defendant makes these assertions, but it is not clear whether the Plaintiff intended to deny that he had performance issues or to deny that Ms. Sullo had email correspondence about the Plaintiff's performance. *See* Pl. Opp. to DSMF ¶¶ 46-49.

employment at Corning before applying for and being hired to a permanent role. DSMF ¶¶ 66-72; Pl. Opp. to DSMF ¶¶ 66-72. During his first stint at Corning, this individual received a 45-day performance evaluation rating of 21 out of 35, and a 90-day rating of 13 out of 35, for a total overall average rating of 17 out of 35. DSMF ¶ 68. He was not hired as a regular employee at this time. *Id*. During his second period of temporary employment at Corning, this individual received a 45-day performance evaluation rating of 14 out of 35, and a 90-day rating of 35 out of 35, and was converted to regular employment. DSMF ¶¶ 71, 72.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that has the potential to determine the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in its favor. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999).

Plaintiff has brought this age discrimination claim under the Maine Human Rights Act ("MHRA"), and not the federal Age Discrimination in Employment Act ("ADEA"). *See* ECF No. 18 ¶¶ 32-40. The MHRA provides:

> It is unlawful employment discrimination, in violation of this Act, except when based on a bona fide occupational qualification . . . [f]or any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of race or color, sex, sexual orientation, physical or mental disability, religion, age, ancestry or national origin . . . or, because of those reasons, to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment . . .

5 M.R.S. § 4572(1)(A). In cases involving allegations of disparate treatment or intentional discrimination based on age, "Maine courts apply the MHRA in accordance with federal anti-discrimination law, including the ADEA." *Boyajian v. Starbucks Corp.*, 587 F. Supp. 2d 295, 303 n.3 (D. Me. 2008); *see also M.H.R.C. v. City of Auburn*, 408 A.2d 1253, 1261 (Me. 1979); *Forrest v. Brinker Intern. Payroll Corp.*, 511 F.3d 225, 228 n.1 (1st Cir. 2007); *Tucker v. Lantmannen Unibake USA, Inc.*, 706 F. Supp. 3d 94, 127 n.114 (D. Me. 2023).

As both parties agree, a claim of intentional employment discrimination is evaluated under the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973); *see also City of Auburn*, 408 A.2d at 1262-63. Under this framework, Plaintiff bears the initial burden to establish his *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case for hiring discrimination, Plaintiff must show (1) that he is a member of a protected class;[4] (2) that he applied and was qualified for the position in question; (3) that his application was nonetheless rejected; and (4) that following his rejection, the position remained open and

---

[4] While the protected class under the ADEA is limited to those who are at least 40 years old, that under the MHRA is not. *See M.H.R.C. v. Kennebec Water Power Co.*, 468 A.2d 307, 309 (Me. 1983).

the employer continued to seek applicants with his qualifications.[5] *Boyajian v. Starbucks Corp.*, 587 F. Supp. 2d 295, 304 n.4 (D. Me. 2008); *see also Goncalves v. Plymouth Cty. Sheriff's Dep't*, 659 F.3d 101, 105 (1st Cir. 2011). This burden is "quite easy to meet," *Boyajian*, 587 F. Supp. 2d at 304 (quoting *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 127 (1st Cir. 1991)), as the required showing is "modest . . . and a low standard," *Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 447 (1st Cir. 2009) (cleaned up).

As an initial matter, the Defendant contends that Ms. Hemly was not aware of the Plaintiff's age when she decided not to hire him and that, as a result, his *prima facie* case must fail. *See Carreras v. Silgan Containers Mfg. P.R., LLC,* No. 22-1156, 2024 WL 504045, *2 (1st Cir. 2024) ("[A]s night follows day, an applicant's actual age could not be the but-for cause of an employment decision if the decision-maker did not know that the plaintiff was not the preferred age."); *Murphy v. Mattis*, No. 2:14-cv-00400, 2017 WL 1157086, *40 (D. Me. Mar. 27, 2017) (similar). But whether Ms. Hemly was in fact the person responsible for the decision not to hire the Plaintiff is itself disputed, as discussed further below. And it is difficult to square Ms. Hemly's statement that she "did not even know Plaintiff's age when he worked for Corning," with her statement that she "does not

---

[5] The Defendant has argued that Plaintiff must show that he met Corning's "legitimate job performance expectations" as an element of the *prima facie* case. *See Joyce v. DeJoy*, No. 2:23-cv-30-JAW, 2024 WL 5170358, at *12 (D. Me. Dec. 19, 2024). As an initial matter, *Joyce* was a wrongful termination case, not a hiring discrimination case—it would be somewhat strange to require a plaintiff to show that he met an employer's expectations for performance in a position to which he had only applied, although the fact that this case involves an application for conversion from temporary to regular employment may make it similar to a wrongful termination case in certain respects. But to the extent the evidence that the Defendant has offered to show that the Plaintiff did not meet Corning's performance expectations also substantiates the Defendant's proffered nondiscriminatory justification for not hiring the Plaintiff, that evidence is properly considered at the second step of the *McDonnell Douglas* inquiry.

8

recall the specific details of Plaintiff's tenure with Corning or his application for a position in the Molding Department." Decl. of Jennifer Hemly ¶¶ 6, 8 (ECF No. 51-7). I am therefore not inclined to draw the conclusion that the Defendant invites—that Ms. Hemly decided not to hire Plaintiff, and did not know his age when she did so—at this stage.

The record in this case shows that Plaintiff was in his 60s when he applied for conversion to regular employment. As a temporary worker who had worked at Corning for more than 90 days, the Plaintiff was qualified to make that application. Because it appears that Corning did not have a particular threshold that it required applicant performance evaluations to clear in order for an applicant to be considered for conversion to regular employment, the Plaintiff's unimpressive performance evaluations were not automatically disqualifying. *See* Def. Resp. to PSMF ¶ 72; Conboy Dep. Tr. 12:10-22. And when the Plaintiff informed his supervisor and HR staff that he had received an offer for conversion, but to the wrong department, they responded by taking steps to facilitate his hiring. *See* DSMF ¶¶ 35-41. These facts, read in the light most favorable to the Plaintiff, could support an inference that the Plaintiff was qualified for the permanent position to which he applied. Yet, the Plaintiff was not hired as a regular employee. Finally, the Plaintiff has identified two younger temporary employees whose applications for the same position were successful. PSMF ¶¶ 40-52; Def. Resp. to PSMF ¶¶ 40-52. This shows that there was "a continuing need" to fill the role, and that Corning turned to younger applicants to meet that need.[6]  *Velez*, 585 F.3d at 447.

---

[6] The Defendant argues that to meet this element of the *prima facie* case, Plaintiff must also show that these younger employees were "similarly situated" to him. *See Goncalves*, 659 F.3d at 106-07. I address the

This "successful prima facie showing creates an inference of discrimination" under First Circuit precedent. *See Boyajian*, 587 F. Supp. 2d at 304. The burden next shifts back to the Defendant to provide "a legitimate, nondiscriminatory reason" for not hiring the Plaintiff as a regular employee. *McDonnell Douglas*, 411 U.S. at 802. This is "only a burden of production, not a burden of persuasion," *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991), which the Defendant has satisfied by pointing to the Plaintiff's lackluster performance evaluations as the reason he was denied conversion to regular employment. *See* Def. Mot. at 17; DSMF ¶ 42.

Once the employer proffers a reason that is "facially adequate to constitute a legitimate, nondiscriminatory justification," the "artificial striations of the burden-shifting framework" are cast aside, *Mesnick*, 950 F.2d at 825, and "the inference of discrimination vanishes," *Boyajian*, 587 F. Supp. 2d at 304. At this point, the question is "whether, on all the evidence of record, a rational factfinder could conclude that age was a determining factor in the employer's decision." *Mesnick*, 950 F.2d at 825. The First Circuit has cautioned that "a plaintiff should not be required to produce 'smoking-gun' evidence before prevailing in a discrimination suit," and that a plaintiff's burden "can be carried without direct proof of discrimination." *Id*. at 824; *see also Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1115-16 (1st Cir. 1989) ("[C]ircumstantial evidence is to be expected in discrimination cases given the complexity of the issues and the difficulty, in this rights

---

sufficiency of these comparators in greater detail in connection with the third step of the *McDonnell Douglas* inquiry. *See infra* pp. 14-15.

conscious era, of producing direct evidence of discrimination."). "There are many veins of circumstantial evidence that may be mined by a plaintiff"—including "the deployment of younger replacements," *Mesnick*, 950 F.2d at 824; evidence of an employer's "[d]eviation from established policy or practice," *Boyajian*, 587 F. Supp. 2d at 306; and "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons," *id*. at 304 (citing *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000)); *see also Jospeh v. Lincare, Inc.*, 939 F.3d 147, 160 (1st Cir. 2021) (similar).

The evidence that the Plaintiff musters to carry this burden is thin, but not so thin as to require granting the Defendant's request for summary judgment. The first bucket of evidence that the Plaintiff points to pertains to Jennifer Hemly's role in the hiring process. The Plaintiff disputes that (as Defendant claims) Ms. Hemly reviewed his performance evaluations and then decided not to go through with his hiring. Pl. Resp. at 17-18 (ECF No. 54). The only evidentiary basis for the Defendant's version of events is Ms. Hemly's declaration, which states that she "would have been the person responsible for reviewing and approving" a temporary worker's offer for regular employment and that based on Plaintiff's performance evaluations, "which demonstrated poor performance," she "would not have approved extending Plaintiff an offer for regular employment." Hemly Decl. ¶¶ 6-7 (ECF No. 51-7). In this declaration and during her deposition, however, Ms. Hemly stated that she did not recall the Plaintiff's application or hiring process. Hemly Decl. ¶ 7; Hemly Dep. Tr. 6:17-10:22 (ECF No. 55, Ex. 7).

11

Ms. Hemly's statements may suffice to show that it would have been consistent with Corning's usual approach to reviewing a temporary worker's application for regular employment for her to make a recommendation based on that worker's performance evaluations. *See Haag v. United States*, 485 F.3d 1, 3 (1st Cir. 2007) (an affidavit describing an office's usual practice was "enough to infer what actually happened" where the affiant did not have personal knowledge). But there is reason to doubt that Corning's usual approach was followed with respect to the Plaintiff—starting with the irregularities surrounding how the Plaintiff came to obtain an offer letter from the Defendant. Ms. Hemly's declaration states that "it was [her] practice to review the temporary workers' performance evaluations" "[b]efore making such offers" of regular employment to temporary workers. Hemly Decl. ¶ 5. But here, if Ms. Hemly did review the Plaintiff's evaluations, she would have done so *after* he had already received an offer letter on April 6, 2021. *See* DSMF ¶¶ 40-42 (Defendant "created an offer letter and provided it to Plaintiff," and "[t]hereafter, Jennifer Hemly . . . determined that Plaintiff's performance evaluations did not meet an acceptable threshold for conversion to a regular employee"). This would be inconsistent with the normal process Ms. Hemly describes, undermining the inference the Defendant hopes to draw from Ms. Hemly's declaration. Because of the central importance of "the perception of the decisionmaker" to the inquiry at hand, *Mesnick*, 950 F.2d at 824, the weakness of the Defendant's evidence as to who made the decision not to hire Plaintiff and why takes greater significance. *See also Jospeh*, 989 F.3d at 160; *Boyajian*, 587 F. Supp. 2d at 306 ("weaknesses . . . in the employer's proffered legitimate reasons" can be circumstantial evidence of discrimination).

12

The Plaintiff also contends that the Defendant has provided false and changing reasons for not hiring him, specifically: (1) that the original offer was not an offer, (2) that there was no money in the budget, and (3) the Plaintiff's performance issues. *See Román v. Hyannis Air Service, Inc.*, 156 F.4th 18, 28 (1st Cir. 2025) ("[S]ubsequent explanations that are inconsistent with or contradict the formally stated justification support an inference that the employer's proffered reason was pretextual."); *Jospeh*, 989 F.3d at 160 ("An employer's changing explanations for an adverse employment action can sometimes provide evidence of pretext."). The Defendant denies that its reasons have changed, pointing out that its contention that the offer letter was extended to the Plaintiff erroneously and its explanation that the Plaintiff's performance history precluded his hiring are "entirely consistent with one another." Def. Reply at 4 (ECF No. 61). As to the Plaintiff's claim that his supervisor told him there was no money in the budget to hire him, the Defendant argues that this statement should be disregarded because the supervisor alleged to have made it was not involved in the hiring decision.[7] "'[S]tray workplace remarks,' as well as statements made by nondecisionmakers or by decisionmakers not involved in the decision process, normally are insufficient, standing alone, to establish either pretext or the

---

[7] The Defendant also characterizes this statement as "uncorroborated hearsay testimony." Def. Reply at 4. To the extent that the Defendant argues that this statement is inadmissible hearsay (and, as a result, barred from consideration at summary judgment), I disagree, as the statement appears to have been offered for the fact that it was made, and not to prove the truth of what it asserts. *See* Fed. R. Evid. 801(c)(2). The lack of corroboration would certainly bear upon the weight a trier of fact might give this evidence, but not upon its admissibility.

requisite discriminatory animus."[8] *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir. 2005). But Ms. Sullo's alleged statement is a supervisor's characterization, to an employee that reported to her, of why that employee was not hired—it seems to me that a reasonable factfinder could conclude that this statement is therefore something more than a "stray workplace remark." *Id*. Moreover, the statement is not considered "standing alone," *id*., but in conjunction with evidence that could point toward it being dishonest—namely, that the Defendant subsequently hired two younger workers in the same position to which the Plaintiff had applied. This inconsistency, if credited by the trier of fact, would "go to the core question of whether [the employer's] purported reason" for not hiring the Plaintiff "was a pretext for age discrimination." *Warner v. Dejoy*, 153 F.4th 109, 116 (1st Cir. 2025). And even though Ms. Sullo testified in her deposition that she was not involved in Plaintiff's application or hiring process, there is evidence in the record that could dispute this. Ms. Sullo was involved in getting Plaintiff's offer transferred to the Molding Department, *see* DSMF ¶¶ 35-36, and Ms. Hemly testified in her deposition that supervisors (such as Ms. Sullo) would typically "provide a recommendation on hiring the employee based on the evaluation." Hemly Dep. Tr., 7:21-25.

The Plaintiff also points to "the deployment of younger replacements," *Mesnick*, 950 F.2d at 825; specifically, two younger temporary workers who were hired as regular employees around this time. *See* PSMF ¶¶ 40-52. The Defendant contends that any

---

[8] For this reason, I agree with the Defendant that the speculative, hearsay statement of a different, non-supervisory employee that the Plaintiff was not hired because he was "too old," PSMF ¶ 60, does not factor into this analysis. *See also* DSMF ¶ 57; Pl. Opp. to DSMF ¶ 57.

14

comparators must also be shown to have "similar qualifications" to the Plaintiff. *Goncalves*, 659 F.3d at 105; *Cocuzzo v. Trader Joe's East, Inc.*, 121 F.4th 924, 933 (1st Cir. 2024). The Defendant argues that the two individuals who were hired instead had "significantly higher" performance evaluations than the Plaintiff did, Def. Mot. at 14, and that as a result, they are not "similarly situated," *Goncalves*, 659 F.3d at 106. Resolving uncertainties in the Plaintiff's favor, as I must, I disagree. The Plaintiff and both proposed comparators were temporary workers, qualified to apply for conversion to regular employment following 90 days on the job. The Plaintiff's evaluation scores ranged from 13 to 21, and the proposed comparators' evaluations ranged from 24 to 35 and 14 to 35, respectively. In addition, the Plaintiff had not been subject to disciplinary action or informed of any negative feedback prior to applying for regular employment. *See* PSMF ¶¶ 6-7.[9] While it is true that the Plaintiff's score range does not overlap with that of the first comparator, there is significant overlap with the second. The Defendant argues that, unlike the Plaintiff's scores, this individual's scores increased over time—but does not point to anything in the record to show that this distinction is one that actually mattered in Corning's hiring process. *See* Def. Mot. at 12-15. Given the Defendant's limited explanation of the role that the evaluations played in the decision-making process beyond the fact that they were "considered," *see* DSMF ¶ 9, I cannot say that these evaluations are

---

[9] The Defendant disputes this, but in response points to evidence in the record indicating that there were complaints about the Plaintiff—not that the Plaintiff had been made aware of those complaints or subject to disciplinary action before the July 2021 meeting. Def. Resp. to PSMF ¶¶ 6-7; DSMF ¶¶ 46-51. Moreover, the complaints and discipline that the Defendant points to in response are from June and July 2021—several weeks *after* the Plaintiff applied for conversion to regular employment and received his offer letter. *See* DSMF ¶¶ 46-51.

so vastly different that a reasonable factfinder could not conclude that the Plaintiff and these other workers were similarly situated.

In theory, then, a reasonable factfinder could determine (1) that, despite Corning's claim to the contrary, it is unlikely that Ms. Hemly reviewed Plaintiff's evaluations and decided to disapprove his hiring on those grounds; (2) that Plaintiff's supervisor told him that he was not hired because there was insufficient money in the budget; (3) that this was false, because Defendant hired two temporary workers as regular employees; and (4) that these later hires were younger than the Plaintiff. Under First Circuit precedent, this "aggregate package of proof"—though indirect and circumstantial—when viewed in the light most favorable to the Plaintiff, could suffice to carry the Plaintiff's burden. *Mesnick*, 950 F.2d at 824. This may not be a particularly compelling package of proof, but its strength would largely depend upon the credibility of the parties' witnesses. And I am mindful that the First Circuit calls for "caution and restraint" at the summary judgment stage where a dispute turns on credibility, pretext, motive and intent. *Taite v. Bridgewater State Univ.*, 999 F.3d 86, 93 (1st Cir. 2021). It is not my place to make that assessment here.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 51) is DENIED.

SO ORDERED.                Dated this 4th day of February, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge